CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
November 05, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

COREY RICHARD PARTON, )
Plaintiff, ) Civil Action No. 7:25-cv-00536
)
v. )
) By: Elizabeth K. Dillon
WEXFORD HEALTH SOURCES, et al., ) Chief United States District Judge
Defendants. )

## MEMORANDUM OPINION

Corey Richard Parton, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs. (Compl., Dkt. No 1.) In his currently operative complaint, Parton sues Wexford Health Sources, Inc., Dr. Saurabh Saxena, Raymond Faber, and Connie Denison.[1] (Second Am. Compl., Dkt. No. 76.)

Pending before the court is defendants' motion to dismiss (Dkt. No. 86). Defendants argue that Parton has failed to state a claim upon which relief can be granted. Parton responded (Dkt. No. 92), defendants did not reply, and the motion to dismiss is ripe for review. Also pending before the court is a motion by Parton in which he requests that the court place a copy of certain medical documentation in the record for trial. (Dkt. No. 100.)

For the reasons stated below, defendants' motion will be granted and Parton's motion will be denied as moot.

## I. BACKGROUND

This matter stems from events that allegedly occurred while Parton was held at facilities under the Western Virginia Regional Jail Authority (WVRJA) and the Southwest Virginia Regional Jail Authority (SWVRJA). (Second Am. Compl. ¶ 2.) Wexford is a private contractor

---

[1] Saxena, Faber, and Denison have each filed notices that they were incorrectly named in Patron's pleadings. (*See* Dkt. Nos. 59, 79, 80.) The court will refer to these defendants by their corrected names.

that provides health services to inmates within the WVRJA and the SWVRJA. (*Id.* ¶ 4.) Saxena and Faber are physicians and Wexford employees who provide medical services to inmates within the WVRJA and the SWVJRA, respectively. (*Id.* ¶¶ 5–6.) Denison is a nurse and Wexford employee who provides nursing services to inmates within the SWVRJA. (*Id.* ¶ 7.) Parton makes the following factual allegations in his second amended complaint, which the court accepts as true when analyzing the motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).

Parton alleges that, on some unspecified date, a Dr. Guthire diagnosed Parton with a high clinical likelihood of mast cell activation syndrome and noted that malingering was unlikely. (Second Am. Compl. ¶ 9.) Dr. Guthrie also allegedly documented various symptoms associated with Parton's medical condition and stated that a low histamine diet was medically necessary and should be accommodated while Parton was incarcerated. (*Id.* ¶¶ 10–11.)

According to Parton, while he was housed within the WVRJA, he experienced severe blood pressure spikes, oxygen desaturation, tachycardia, and episodes of loss of consciousness. (*Id.* ¶ 13.) Parton alleges that, rather than transporting him to a hospital during such "acute medical crises," "medical staff" within the WVRJA placed him in segregation. (*Id.* ¶ 14.) Parton further alleges that he was "labelled malingering despite [showing] objective vital sign abnormalities." (*Id.* ¶ 15.) According to Parton, he was initially prescribed antihistamines, including Xyzal twice daily, to treat his symptoms, but such medications "were discontinued without adequate evaluation." (*Id.* ¶ 16.)

After Parton was transferred to a facility within the SWVRJA, he allegedly informed Dr. Faber and Nurse Denison of his medical conditions "and [his] required medications." (*Id.* ¶ 17.) According to Parton, Dr. Faber ordered testing for mast cell degranulation syndrome instead of

the "appropriate evaluation for mast cell activation syndrome." (*Id.* ¶ 18.) After the test Dr. Faber administered to Parton "returned negative," Dr. Faber discontinued prescribing Parton antihistamines and "ceased meaningful evaluation" even though Parton exhibited ongoing symptoms. (*Id.* ¶ 19.) Parton alleges that he experienced a "hypertensive emergency" of an elevated blood pressure and loss of consciousness. (*Id.* ¶ 20.) According to Parton, although he requested to be transported to a hospital, Nurse Denison "refused" and ordered Parton to be "placed in medical isolation without meaningful monitoring." (*Id.* ¶ 21.) Parton further claims that Dr. Faber refused to personally evaluate Parton or authorize hospital transfer despite him having suffered "repeated emergencies." (*Id.* ¶ 22.)

On some unspecified date, Parton was transferred back to a facility within the WVRJA. (*Id.* ¶ 23.) Parton alleges that "Xyzal has been denied for several months despite [his] written request for reinstatement." (*Id.* ¶ 24.) Parton further alleges that he is provided Zyrtec once per day without formal evaluation or explanation for a reduction in dosage. (*Id.* ¶ 25.) According to Parton, "Defendants" "routinely allow prescribed medications to lapse for one to two weeks despite advance notice from blister packaging indicating reorder necessity." (*Id.* ¶ 26.) Parton alleges that, as a result, he has experienced withdrawal symptoms, insomnia, the inability to eat, and physiological instability. (*Id.* ¶ 28.) Parton further alleges that, despite "prior dosing errors," "Defendants" continue to administer crushed or dissolved medication to Parton which prevents him from "verifying dosage or identity." (*Id.* ¶ 30.) According to Parton, certain medication substitutions, including Allegra in place of Zyrtec, have been made without proper evaluation which has resulted in Parton suffering adverse reactions. (*Id.* ¶ 31.)

Parton alleges that, despite Dr. Guthrie's "documentation requiring a low histamine diet," "Defendants" have refused to implement necessary dietary accommodations. (*Id.* ¶ 32.) Parton

further alleges that "[m]edical staff" have stated that an allergy test is required before his requested dietary accommodation may be implemented, even though "no such diagnostic requirement exist[s] for histamine intolerance." (*Id.* ¶ 33.) As a result, Parton has, on several occasions, allegedly been served meals consisting only of small portions of rice and "minimal vegetables." (*Id.* ¶ 34.) According to Parton, since his transfer out of the SWVRJA and back into the WVRJA, he has lost approximately 40 pounds in around four months despite "not attempting weight loss." (*Id.* ¶¶ 37–38.)

Parton states that defendants' actions have violated his rights under the Fourteenth Amendment and asserts the following three claims: First, Parton claims that defendants were deliberately indifferent to his serious medical needs by discontinuing medications, failing to reorder prescriptions, refusing hospital transport during emergencies, and denying specialist-recommended treatment. (*Id.* ¶¶ 40–42.) Second, Parton claims that Wexford's official policies and customs "were a moving force behind [his alleged] constitutional violations." (*Id.* ¶¶ 43–44.) Third, Parton claims that defendants failed to provide nutritionally adequate meals consistent with his medical needs which caused him to suffer significant weight loss and general health deterioration. (*Id.* ¶¶ 45-47.) Parton requests specific medical-related injunctive relief as well as compensatory and punitive damages. (*Id.* at 5; *see also* Dkt. No. 94.)

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The court need neither accept a complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pleadings by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

**B. Analysis**

Parton is pursuing his claims against defendants under 42 U.S.C. § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Importantly, liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Parton has asserted various claims against defendants. The court addresses his claims against each defendant in turn.

**1. Allegations against all defendants**

As a preliminary matter, defendants note, and the court agrees, that many of Parton's allegations are attributed to the defendants as a group. For example, Parton alleges that "Defendants" "routinely allow prescribed medications to lapse for one to two weeks despite advance notice from blister packaging indicating reorder necessity." (Second Am. Compl. ¶ 26.) Likewise, Parton alleges that "Defendants" "have refused to implement medically necessary dietary accommodations." (*Id.* ¶ 32.) Parton makes similar allegations as to "medical staff." (*Id.* ¶¶ 14, 33.)

To state a claim under § 1983, a plaintiff must allege a personal connection between each defendant's actions and the denial of his or her constitutional rights. *See Trulock*, 275 F.3d at 402; *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (cleaned up)). Accordingly, a plaintiff cannot rely merely on allegations that "defendants' violated his rights without specific allegations as to each of their conduct that allegedly gives rise to liability. *See, e.g.*, *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 505 F. Supp. 3d 570, 581–82 (M.D.N.C. 2020) ("In an action against multiple defendants, a complaint must state facts that support a cause of action against each individual defendant. Blanket conclusory allegations as to multiple defendants are insufficient. A plaintiff cannot rely on bare allegations relating to the conduct of all defendants to hold a defendant liable, but must identify specific acts or conduct taken by each defendant to state a claim." (cleaned up)). Accordingly, to the extent that Parton's claims are based on

allegations against "defendants" or "medical staff," they are denied. With this issue addressed, the court will consider Parton's specific allegations against each defendant in turn.

**2. Wexford**

As noted, Wexford is a private corporation that provides medical services to inmates within the WVRJA and the SWVRJA. (Second Am. Compl. ¶ 4.) Parton cannot seek to hold Wexford vicariously liable for the actions of the other defendants or any of Wexford's employees. *See Clark v. Md. Dep't of Pub. Safety and Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (per curiam) (citing *Rodriquez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003)). Instead, for Wexford to be liable for his claims, Parton must show that "an official policy or custom of the corporation caused the alleged deprivation of federal rights." *Henderson v. Riverside Reg'l Jail*, No. 1:23-cv-00693, 2024 WL 3093572, at *4 (E.D. Va. June 20, 2024) (quoting *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999)). To survive a motion to dismiss, a plaintiff's "description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Allen v. Good*, No. 7:22-cv-00351, 2023 WL 5984287, at *6 (W.D. Va. Sept. 14, 2023) (quoting *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022)).

Parton has identified no official policy or custom of Wexford's that allegedly caused his constitutional injuries. Instead, he merely states that Wexford "maintains policies or customs [that] result[] in medication lapses, improper diagnostic practices, and [the] denial of medically necessary diets." (Second Am. Compl. ¶ 43.) But such conclusory and nonspecific allegations are insufficient to state a claim against Wexford. *See Allen*, 2023 WL 5984287, at *6. Accordingly, defendants' motion to dismiss will be granted as to Wexford.

**3. Dr. Saxena**

Parton does not describe any conduct attributable to Dr. Saxena in the body of his second amended complaint. (*See* Second Am. Compl.) Indeed, apart from naming Dr. Saxena as a defendant, Parton does not mention the physician in his pleading at all. (*See id.*) And though he describes certain conduct attributable to unnamed medical staff and "Defendants" in general, this does not suffice to state a claim against Dr. Saxena.

As discussed, liability under § 1983 "will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Vinnedge*, 550 F.2d at 928. And a plaintiff may not "rely on bare allegations relating to the conduct of all defendants to hold a defendant liable but must identify specific acts or conduct taken by each defendant to state a claim." *Intercollegiate Women's Lacrosse Coaches Ass'n*, 505 F. Supp. 3d at 58 (cleaned up). Here, there is simply not enough factual matter in the second amended complaint to suggest more than the possibility of misconduct by Dr. Saxena. Accordingly, defendants' motion to dismiss will be granted as to Dr. Saxena.

**4. Dr. Faber and Nurse Denison**

As discussed, Parton has asserted deliberate indifference to serious medical needs claims against Dr. Faber and Nurse Denison. (*See* Second Am. Compl. ¶¶ 17–22, 40–42.) In support of these claims, Parton alleges that, upon his transfer into the SWVRJA, he informed Dr. Faber and Nurse Denison about his medical conditions and required medications. (*Id.* ¶ 17.) Parton also alleges that Dr. Faber administered incorrect testing on Parton which "returned negative," and that Dr. Faber stopped prescribing Parton with antihistamines and "ceased meaningful evaluation" despite him exhibiting "ongoing symptoms." (*Id.* ¶¶ 18–19.) Parton also claims that he experienced a "hypertensive emergency" of elevated blood pressure and loss of consciousness

and, accordingly, asked to be transported to a hospital, but that Nurse Denison "refused" and ordered Parton to be "placed in medical isolation without meaningful monitoring." (*Id.* ¶¶ 20–21.) Parton also claims that Dr. Faber refused to personally evaluate Parton or authorize hospital transfer despite him having suffered "repeated emergencies." (*Id.* ¶ 22.)

To state a deliberate indifference to serious medical needs claim under the Fourteenth Amendment,[2] a plaintiff must allege:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's actions or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Mere negligence is insufficient to establish a claim under this standard. *Id.* at 611–12. Instead, a plaintiff must show that "the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should have been known.'" *Id.* at 611 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

Here, even liberally construing his allegations, Parton has failed to state a deliberate indifference claim against either Dr. Faber or Nurse Dennison. As to Dr. Faber, Parton clearly disagrees with the physician's decision to administer what Parton claims was the incorrect diagnostic test. But "mere disagreement[] between an inmate and a medical provider over the proper course of diagnosis or treatment 'falls short of showing deliberate indifference'" under

---

[2] Parton does not state whether he was a pretrial detainee or a convicted prisoner when the events at issue allegedly occurred. (*See* Second Am. Compl.) And depending on his incarcerated status at the time, either the Eighth Amendment or the Fourteenth Amendment would apply to Parton's claims. *See Lynch v. Hill*, No. 7:25-cv-00753, 2026 WL 1046595, at *2–4 (W.D. Va. Apr. 17, 2026). However, in his second amended complaint, Parton asserts his claims under the Fourteenth Amendment (Second Am. Compl. ¶ 42) which defendants accept in their briefing in support of their motion to dismiss. (Dkt. No. 87 at 5.) For these reasons, the court will assess Parton's claims under the rubric of the Fourteenth Amendment.

the Fourteenth Amendment. *Monchéry v. Dryden*, No. 7:23-cv-00461, 2025 WL 2842399, at *3 (W.D. Va. Oct. 7, 2025) (quoting *Jackson*, 775 F.3d at 178). And as Parton himself notes, the diagnostic test Dr. Faber used returned a negative result, which presumably justified—or at least explained—Dr. Faber's decision to stop prescribing Parton antihistamines. Moreover, although Parton claims to have continued to have exhibited "ongoing symptoms" and later suffered "repeated emergencies," he provides no facts to show that Dr. Faber knew or should have known about these circumstances. Without more, the court cannot say that Dr. Faber failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should have been known[,]" as is required to state a Fourteenth Amendment deliberate indifference claim. *Short*, 87 F.4th at 611.

As to Nurse Denison, although Parton claims that the nurse refused to send him to a hospital and instead placed him in medical isolation "without meaningful monitoring[,]" he does not show that any alternatives were necessary. Parton alleges no facts to show that his medical condition at the time required him to be transported to a hospital. And though inmates have the right to medically necessary medical treatment, that right does not extend to treatment "which may be considered merely desirable." *Jones v. Gujral*, No. 3:16-cv-00019, 2018 WL 3451460, at *4 (E.D. Va. July 17, 2018) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *see also Seymour v. Sw. Va. Reg'l Jail Auth.*, No. 7:24-cv-00377, 2025 WL 2414178, at *4 (W.D. Va. Aug. 20, 2025) ("[T]he Constitution is not a medical code that mandates specific medical treatment . . . and neither a convicted prisoner nor a pretrial detainee enjoys a constitutional right to the treatment of his or her choice.") (internal citations, quotation marks, and bracketing omitted). Moreover, apart from a conclusory allegation that his monitoring in isolation was not "meaningful," Parton provides no facts to show that it was constitutionally deficient. Thus,

Parton has failed to allege sufficient facts to show that Nurse Denison was deliberately indifferent to his serious medical needs.

Accordingly, defendants' motion to dismiss will be granted as to Dr. Faber and Nurse Denison. Because the court will dismiss Parton's claims against all defendants with prejudice,[3] it will deny as moot Parton's sole pending motion.

## III. CONCLUSION

For the reasons stated in this opinion, the court will issue an appropriate order granting defendants' motion to dismiss and denying as moot Parton's motion.

Entered: November 5, 2026

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
Chief United States District Judge

---

[3] *See, e.g., Wesley v. Charlotte-Mecklenburg Cnty. Police Dep't*, No. 3:19-cv-00425, 2021 WL 1971499, at *8 n.4 (W.D.N.C. May 17, 2021) (dismissing with prejudice *pro se* plaintiff's claims under Rule 12(b)(6) "given the multiple opportunities for [the] [p]laintiff to amend his complaint and his failure to set forth a plausible claim against [the defendant]"); *see also Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985) (noting that whether to dismiss claims with prejudice under Rule 12(b)(6) "is within the district court's discretion").